LAW OFFICE
D. GAYLE LOFTIS
210 RIVER STREET
HACKENSACK, NEW JERSEY 07601
(201) 646-9141
Attorney for Plaintiff

| | |
|---|---|
| ANNA McCLEMENT,<br><br>Plaintiff,<br><br>vs.<br><br>PORT AUTHORITY TRANS-HUDSON CORPORATION, a wholly owned subsidiary of PORT AUTHORITY OF NEW YORK & NEW JERSEY<br><br>Defendant. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Civil Action No.: 11-6839 (CCC)<br><br>FIRST AMENDED COMPLAINT<br>and<br>JURY DEMAND |

Plaintiff, **ANNA McCLEMENT**, by way of Complaint against the Defendant, Port Authority Trans-Hudson Corporation, a wholly owned subsidiary of Port Authority of New York & New Jersey, says:

## COUNT ONE

1. The Plaintiff, Anna McClement, (hereinafter "McClement") has an address in Chester, County of Morris, State of New Jersey.

2. At all times relevant to this matter, the Defendant, Port Authority Trans-Hudson Corporation (hereinafter "PATH"), is considered to be in the railroad/transportation industry.

3. PATH is a wholly owned subsidiary of the Port Authority of New York & New Jersey which is a bi-state agency organized and created under the laws of the States of New York and New Jersey.

4. The PATH has offices at 1 Path Plaza, in the City of Jersey City, County of Hudson, State of New Jersey.

5. The Defendant PATH is considered to be an employer subject to the provisions of 42 U.S.C. §12101 *et seq.* and based upon the definition of an employer that is set forth within 42 U.S.C. §12111(5).

6. The Defendant PATH has all times relevant to these claims employed continuously at least fifteen (15) or more employees and is considered to fill the definition of employer as contained within 42 U.S.C. §12111(5).

7. This case arises under the United States Constitution and under federal law, more particularly, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, for unlawful discrimination based upon gender in employment and in retaliation against the Plaintiff for her previously having objected to practices believed to be age and gender discriminatory.

8. Plaintiff asserts that there has been a violation of her rights under the Petition and the Speech clauses of the First Amendment of the United States Constitution by the actions of the Defendant as will be more fully set forth herein.

9. This Court has jurisdiction of this case under and by virtue of 28 U.S.C. §§1331 and 1343(a)(4) and may exercise supplemental jurisdiction over such state claims and causes of action as may be alleged herein.

10. Venue properly resides with this Court pursuant to 28 U.S.C. §1391(b).

11. McClement began working in PATH on May 13, 2002, as a certified locomotive engineer.

12. This case arises under the United States Constitution and under federal law, more particularly the First and Fourteenth Amendments to the United States Constitution, as well as the Constitution and laws of the State of New Jersey.

2

13. Plaintiff also asserts that there has been the subject of disparate treatment based on her gender in violation of the Fourteenth Amendment of the United States Constitution by virtue of the actions of the Defendants as will be more fully set forth herein.

14. This Court has jurisdiction of this case under and by virtue of 28 U.S.C. §§ 1331 and 1343(a)(3) and may exercise supplemental jurisdiction over such state claims and causes of action as may be alleged herein.

15. Venue properly resides with this Court pursuant to 28 U.S.C. §1391(b).

16. Plaintiff is a female citizen of the United States and is age fifty-one (51).

17. Prior to April 29, 2011, the Plaintiff has filed numerous written charges with the EEOC and voiced objections to actions and conduct of the Defendant which she believed to be in violations of her rights to a workplace that was free of a age and gender discrimination.

18. The EEOC charges were based upon the denial of promotion opportunity and treatment, were given Charge numbers: 524-2008-01507, 524-2009-00361, 524-2009-00631, 524-2010-00186, 524-2010-01075, and were duly served upon, and responded to by, the Defendant.

19. The complaints that had been filed by her with the EEOC would constitute protected conduct under the Petition clause of the First Amendment of the United States Constitution.

20. Following the initiation of the EEOC charge process, the Plaintiff had also received Right to Sue Notices with copies transmitted to the Defendant, and had initiated litigation within the United States District Court under Civil Action number 09-522 (SRC).

21. On June 29, 2011, the United States District Court rendered a summary judgment decision on the 2009 Complaint noted in the preceding paragraph, and which was adverse to the Plaintiff and which is believed to have been appealed to the United States Third Circuit Court of Appeals.

22. On April 28, 2011, the Plaintiff was operating a train between Journal Square in Jersey City and 33rd Street in New York City.

23. While waiting for a signal to permit the train to leave the station, the Plaintiff had to utilize the bathroom.

24. The Plaintiff notified the conductor of where she was going, went to the bathroom, and returned within less than two minutes, subsequently received the signal to permit the train to leave the station, and left the station when authorized to do so for the train's next stop.

25. Subsequent to the event referenced above, the Plaintiff was the subject of disciplinary charges that selectively targeted her, were the result of a pattern of micro scrutiny of her work activities by management personnel of the Defendant and required to repeatedly engage in writing reports to document her work actions, which scrutiny and report demands she reasonably believed were retaliatory to her prior complaints and filing of the EEOC charges.

26. On April 29, 2011, two male supervisors of the Defendant utilized a pretext that they were walking the Plaintiff to a copier to copy a report she had written under the direction of defense management, when she was taken into a small room from which her exit was physically blocked by one of the men, and despite her requests, she was refused the ability to have the room door opened or to leave the room until she had complied with the orders of the male supervisors to write another report.

27. The Plaintiff began to experience a panic attack triggered by the actions of the male supervisors, and attempted to comply with their orders, only to have her job threatened by the male supervisors who then let her leave. The report noted that she intended to file an EEOC complaint regarding their actions.

28. On April 29, 2011, the Plaintiff made a report with the Port Authority Police regarding the actions of the male supervisors of the Defendant, which actions included their refusal to permit her to leave the closed-door room, and the threat of her employment status, as well as her indication that she felt sexually harassed by the conduct and remarks of the male supervisors.

29. But for the gender of the Plaintiff, she does not believe that the Defendants male supervisors would have used the pretext of getting her into a closed room from which they would not let her leave until they received the demanded report.

30. The filing of the criminal complaint with the Port Authority Police would constitute protected activity under the First Amendment petition clause.

31. On May 3, 2011, the Plaintiff wrote a written letter of complaint to the Executive Director of the Port Authority, Christopher Ward. In the letter she reiterated the events of April 28 and 29, 2011, and requested an investigation of the discriminatory and harassing actions of the male supervisors.

32. The filing of the letter of complaint with Executive Director Ward constituted protected activity under the First Amendment petition clause.

33. The actions of the male supervisors caused the Plaintiff to suffer from anxiety and a re-trigger of prior non-work related post traumatic stress.

34. The Petitioner was required to remove herself from the workplace in order to treat the medical conditions which resulted from the actions of the supervisors on April 28 and 29, 2011.

35. The Plaintiff notified the Defendant that she could not work due to her medical condition and that she was under medical care.

36. The Defendant unilaterally ordered the Plaintiff to attend a medical evaluation with the Defendant's Office of Medical Services which was scheduled for May 11, 2011.

37. The appointment given the Plaintiff was in conflict with that provided by her treating medical provider.

38. When advised of the conflict by the Plaintiff, the OMS department indicated to the Plaintiff that she need only provide a note from the doctor to verify the conflict in times and it could be rescheduled by telephone the next date.

39. On May 12, 2011, the Plaintiff attempted to reschedule the medical evaluation only to be told that she would be marked as "no show" and there would be no re-scheduling of the appointment, but rather the Plaintiff would be disciplined for her inability to attend the examination on May 11, 2011.

40. The Defendant brought disciplinary charges against the Plaintiff on May 24, 2011 purportedly based upon the actions that took place on April 28 and 29, 2011, and for an inability of the Plaintiff to attend a unilaterally scheduled medical examination on May 11, 2011.

41. The hearing on the charges was held before an employee of PATH on August 12 and 17, 2011.

42. As a result of the charges, the Defendant suspended the Plaintiff for a total of 80 workdays without pay.

43. A suspension without pay would constitute an adverse employment action, the spector of which could reasonably be expected to dissuade an employee from filing or pursuing EEOC charges.

44. Sexual harassment, gender and/or age discrimination and disparate treatment of female employees based on gender or sex, are all issues of public concern.

45. The complaints of the Plaintiff constituted speech protected under the First Amendment.

46. The disciplinary charges as filed against the Plaintiff were baseless and initiated as a form of retaliation for the Plaintiff engaging in prior protected conduct.

47. The Defendants' actions have constituted violations of the Plaintiff's Constitutional rights of association, speech, petition and/or freedom of expression under the First Amendment of the United States Constitution, as well as her rights of due process and equal protection under the Fourteenth Amendment of the United States Constitution, and have caused the Plaintiff to incur damages of an economic, and non-economic nature as well as humiliation, emotional distress and anxiety.

2. This Count is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, for unlawful gender discrimination in employment and in retaliation against Plaintiff for her having objected to such practices.

48. In the summer of 2011, the Plaintiff initiated proceedings within the Equal Employment Opportunity Commission (hereinafter "EEOC"), which resulted in its issuance of a charge, assigned charge number 524-2011-00796, for unlawful discrimination based on gender and retaliation.

49. On August 23, 2011, a Right to Sue Notice was received from the U.S. Department of Justice, Civil Rights Division, in regard to the aforenoted charge and the Plaintiff was put on notice that she had ninety (90) days within which to institute suit within the U.S. District Court should she so choose for violations of her rights under Title VII of the Civil Rights Act, as amended.

50. Plaintiff has fulfilled all conditions precedent to this cause of action and timely brings this matter pursuant to Title VII of the Civil Rights Act, and for such damages as to which she may be entitled, based upon the conclusion of the charge investigation previously referenced.

7

**WHEREFORE**, the Plaintiff demands judgment pursuant to 42 U.S.C. §2000e *et seq.* against the County of Hudson for compensatory damages together with interest and costs of suit, as well as counsel fees, and such other just and equitable relief as this Court may order.

## COUNT TWO

1. Each and every allegation of Count One are repeated and re-alleged as if set forth at length herein.

2. The prior EEOC charges filed by the Plaintiff were a form of protected speech as they dealt with a subject of public concern in the manner of which female employees were treated by the Defendant in regards to promotions.

3. The May 3, 2011-letter to Executive Director Christopher Ward was a letter that addressed a matter of public concern in regard to male supervisors selecting and directing female employees to rooms at the job site under the pretext of business and then retaining the female employees by physical actions in such a location against the wishes and consent of the female employees.

4. The letter sent to Christopher Ward by the Plaintiff concerning the events of April 28 and 29, 2011, was an action subject to the protection of the Petition Clause of the First Amendment of the Constitution.

5. The Charge filed by the Plaintiff with the EEOC concerning the events of April 28 and 29, 2011, was an action subject to the protection of the Petition Clause of the First Amendment of the Constitution.

6. The actions taken against the Plaintiff by the Defendant supervisory employees were done as a pretext for retaliation against an employee for exercise of their First Amendment rights.

7. The Defendants' actions have constituted violations of the Plaintiff's Constitutional rights of association, speech, petition and/or freedom of expression under the First Amendment of the United States Constitution, as well as her rights of due process and equal protection under the Fourteenth Amendment of the United States Constitution, and have caused the Plaintiff to incur damages of an economic, and non-economic nature as well as humiliation, emotional distress and anxiety.

8. The aforesaid actions of the Defendants constitute a violation of 42 U.S.C. §1983 which have proximately caused the Plaintiff to incur the damages described within this Complaint.

**WHEREFORE**, the Plaintiff demands judgment against the for compensatory damages and back pay together with interest and costs of suit, as well as counsel fees pursuant to 42 U.S.C. § 1988, as well as punitive damages and such other just and equitable relief as this Court may order, inclusive of equitable relief requiring the Defendants' supervisory employees to be trained in a manner so as not to violate the constitutional rights of others and equitable relief requiring the Defendants to establish a practice and policy under which employees and/or supervisors who engage in such discrimination, sexual harassment and retaliation are reasonably held accountable for their actions.

## COUNT THREE

1. Each and every allegation of Count One are repeated and re-alleged as if set forth at length herein.

2. On April 29, 2011, he two PATH male supervisors, more specifically Astagne Avril the Chief Operations Examiner (hearinafter "Avril") and Carl Lupia, an Operations Examiner, (hereinafter "Lupia"), compelled the Plaintiff to go into and remain in a small supply/closet room also located in the Operator Engineers Office.

9

3.  On the date and location in question, the Plaintiff was in a zone of danger of immediate risk of physical harm which was created by the male supervisors' contact with the Plaintiff on several occasions during the encounter described in the preceding paragraph, while coupling same with threats of being able to compel her to perform such actions as "they" wanted, not what she wanted and to force her to remain in the room while physically preventing her exit, thereby negligently causing the Plaintiff to incur harm and injury from the contacts and conduct of the supervisors.

4.  More specifically, Lupia blocked the door with his body and arm to prevent her exit and passage through the doorway; Avril grabbed the Plaintiff's hand, brushed his arm against her breast area when he went to hang up the phone she had in her hand during her attempt to obtain assistance.

5.  The aforesaid actions combined to cause the Plaintiff to feel apprehensive and emotionally distraught, as well as physically threatened and harassed, both from the threatened physical impact, then taking place and into the future, and from the actual physical contact and remarks made to her, exacerbating the psychological and psychiatric injury that she previously incurred from domestic violence.

6.  The Defendant in this matter is responsible for the negligent actions of its supervisory employees, Avril and Lupia, where those actions cause harm and injury to others.

7.  As a direct and proximate result of the aforesaid negligence of the Defendants' employees, the Plaintiff was caused to suffer diverse and sundry damages, including but not limited to a the development of chronic post traumatic stress disorder for which she received medical treatment, as well as a loss of income, permanent disability, and will continue to incur future lost

income, great pain and suffering, and expenses for the treatment of said injuries, which have caused her to seek and be awarded a disability pension.

8. The Defendant was aware, or should have been aware, that the male supervisors had engaged in prior behavior that would place the female employees in the zone of danger from the physical actions of its male supervisors.

9. The events in this matter constitute negligence which has resulted in whole, or in part, from the conduct of employees of the railroad carrier, and are recoverable pursuant to 45 U.S.C. § 51 *et seq.*.

**WHEREFORE,** Plaintiff demands Judgment against the Defendant, for compensatory damages, together with interest and costs of suit and such other relief as the Court may determine to be just and equitable.

### JURY DEMAND

Plaintiffs demands a jury trial on all issues so triable.

> D. GAYLE LOFTIS, ESQ.
> 210 River Street, Suite 32
> Hackensack, New Jersey 07601
> Telephone: (201) 646-9141
> Fax: (201) 488-7029

Dated: August 23, 2012

11