**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA McCLEMENT,<br><br>                         Plaintiff,<br><br>      v.<br><br>PORT AUTHORITY TRANS-HUDSON<br>CORPORATION, a wholly owned<br>subsidiary of PORT AUTHORITY OF<br>NEW YORK AND NEW JERSEY,<br><br>                         Defendant. | Civil Action No.: 11-cv-06839 (CCC)<br><br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on the motion of Defendant Port Authority Trans-Hudson ("PATH" or "Defendant") for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all counts of the Second Amended Complaint filed by Plaintiff Anna McClement ("Plaintiff"). ECF No. 64. Plaintiff opposes the motion. ECF No. 70. The Court heard oral argument in this matter. ECF No. 84. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Plaintiff's Employment

Plaintiff began working for PATH in 2002 as a certified locomotive engineer. Declaration of Thomas Brophy ("Brophy Decl."), ECF No. 64, Ex. 1, Deposition of Anna McClement ("McClement Dep."), Tr. 18:9–20:9. Plaintiff's employment with PATH ended in or about November 2011, *id.*, Tr. 23:25–24:2, when Plaintiff took a disability annuity from the Railroad Retirement Board. *See* Brophy Decl., Ex. 47. Between 2008 and 2011, Plaintiff filed five EEOC Charges of Discrimination alleging discrimination based upon her sex, age, and

retaliation.  *See id.*, Ex. 35-40.  These charges generally allege that Plaintiff was discriminated against and harassed based on her sex, but do not provide specific allegations of sexual harassment.  *See id.*

  **B.**  **Incidents on April 28 and April 29, 2011**

  On April 28, 2011, Plaintiff was working on a PATH passenger train.  Defendant's Statement of Material Facts ("DSMF"), ECF No. 64-1 ¶ 60; Plaintiff's Responsive Statement of Material Facts ("PRSMF"), ECF No. 69 ¶ 60.  At some point during her shift, Plaintiff left her train at the 33rd Street Station for an unscheduled bathroom break.  *Id.* ¶ 75.  Before leaving the train, Plaintiff informed train conductor Angelo Costa, but did not inform the tower operator, trainmaster, or dispatcher.  *Id.*  Plaintiff contends she was away from the train for "[p]ossibly a minute, minute-and-a-half" in total.[1]  McClement Dep., Tr. 188:22–23.  Dispatcher Chandra Matos asked Plaintiff to write an Unusual Occurrence Report ("UO Report") regarding her unscheduled break.  Brophy Decl., Ex. 15 Tr. 98:6-22. At some point thereafter, Plaintiff allegedly said to Mr. Costa, "Can you believe they are making me write a report for using the bathroom?  It's bullshit."[2]  McClement Dep., Tr. 205:5–11; DSMF ¶ 85; PRSMF ¶ 85.

  At the end of Plaintiff's shift on April 28, 2011, she filled out multiple UO Reports regarding the unscheduled bathroom break and her use of foul language.  DSMF ¶ 87; PRSMF ¶ 87.  Plaintiff requested the opportunity to rewrite some of the reports with the benefit of a

---

[1] Defendant contends Plaintiff's break was longer and disrupted the train schedule at the station. Brophy Decl., Ex. 15 at PATH 000274.

[2] Defendant contends Plaintiff swore at Ms. Matos, not at Mr. Costa, when directed to write an UO Report.  Brophy Decl., Ex. 15 at PATH 000284, 000297, 000317.

dictionary, which was granted.[3]  McClement Dep., Tr. 206:22–207:15.

The next day, April 29, 2011, Chief Operations Examiner Astagne Avril and Operations Examiner Carl Lupia met Plaintiff in the Journal Square Station at the end of her shift to pick up her revised UO Reports.  DSMF ¶ 108; PRSMF ¶ 108.  Plaintiff alleges that as she attempted to exit the Journal Square Station, Mr. Avril grabbed her elbow and threatened that her employment would be terminated if she did not accompany him to make copies of the UO Reports.  DSMF ¶¶ 122–24; PRSMF ¶¶ 122–24.  Defendant disputes these facts.  Defendant contends that Mr. Avril wanted to speak privately with Plaintiff because her UO Reports inadequately addressed the events of April 28, 2011, and Mr. Avril testified that he did not touch Plaintiff at any time.  DSMF ¶¶ 112–14; Deposition of Astagne Avril ("Avril Dep."), Tr. 90:3–5, 100:2–13, 122:25–123:7, 130:14–17.

Mr. Avril and Mr. Lupia then brought Plaintiff to the Operations Field Office, which has a computer workstation, a telephone, and supplies.  *Id.* ¶¶ 121–23.  Both Mr. Avril and Plaintiff described the office as a small room.  Plaintiff said it was hard to have three people in the room.  McClement Dep., Tr. 146:20–25.  When Mr. Avril was asked about available floor space in the room, he said only "[t]wo, three people, maybe four can stand in there."  Avril Dep., Tr. 98:23–99:5.  Plaintiff alleges Mr. Lupia blocked the door to the office with his arm, and she believed they had ulterior motives for bringing her to the room.  McClement Dep., Tr. 146:13–16, 147:6–10.  Plaintiff alleges she demanded to leave, but Mr. Avril responded, "It's not what you want, it's what we want from you."  DSMF ¶¶ 126–27; PRSMF ¶¶ 126–27.  Plaintiff said she felt

---

[3] Plaintiff's first language is Ukrainian.  However, Plaintiff testified in her deposition that she has been "pretty fluent" in English since she was ten years old and holds an Associate's Degree and a Bachelor's Degree from schools in the United States.  McClement Dep., Tr. 207:10–18.

threatened and described Mr. Avril as a "big" man, weighing about 300 pounds and standing over six feet tall. *Id.* Tr. 145:5–11. Plaintiff used a phone in the room to call several PATH officials, including Director Mike DiPaolo, but they were unavailable. *Id.* ¶ 129. Plaintiff allegedly told Mr. DiPaolo's secretary she was being "held against [her] will by two male supervisors," and that she had a doctor's appointment to go to, but they would not let her out of the room. McClement Dep., Tr. 151:3–6. While Plaintiff was on hold with Mr. DiPaolo's office, she asked for the door to be opened and Mr. Lupia opened the door. DSMF ¶¶ 130–31; PRSMF ¶¶ 130–31. While on hold, Plaintiff also re-wrote the UO Report, which stated: "Mr. Avril is making me write this report in duress after working all nite [sic]. I did not use any foul language in front of anyone." *Id.* ¶ 133. Plaintiff also attempted to call 911, at which point, Plaintiff contends, Mr. Avril touched, brushed, or grabbed her breast and hung up the phone she was using. DSMF ¶¶ 135–36; PRSMF ¶¶ 135–36.[4] Mr. Avril allegedly said: "Now we have your job for falsifying a report. We're going to take you out of service for insubordination,"[5] and Plaintiff left the room. DSMF ¶¶ 137–39; PRSMF ¶¶ 137–39. Defendant denies the assertion that Mr. Avril touched Plaintiff's breast, as Mr. Avril testified that he did not physically touch or brush up against Plaintiff at any time on April 29, 2011. *See* DSMF ¶ 143; Avril Dep.,

---

[4] Plaintiff failed to indicate she had any physical contact with Mr. Avril in her subsequent EEOC complaint, police report, letter to PATH Executive Director Ward, letter to OSHA Supervisory Investigator Schreck, meetings with treating doctors, or in conversations with her union representative. Brophy Decl., Ex. 10, Tr. 148:8–149:2; Ex. 12, Tr. 138:1–21; Ex. 26; Ex. 29 at PATH 001965–66; Ex. 30; Ex. 41.

[5] It does not appear that Plaintiff was charged for falsifying a UO Report. *See* DSMF ¶ 138. Plaintiff alleges she was charged with "fail[ing] to submit a proper report upon request." *See* PRSMF ¶ 138. However, the allegation by PATH specifically states: "[O]n April 28, 2011 when directed to submit a report by Operations Examiner Matos in connection with your relief time; you engaged in a confrontation using profane and indecent language and failed to submit a proper report upon request." *See* Brophy Decl., Ex. 15 at 141. Therefore, this allegation does not relate to the incident with Mr. Avril and Mr. Lupia on April 29, 2011.

4

Tr. 122:25–123:7, 130:14–17.

Later that day, Plaintiff filed a report with the PATH Police.   DSMF ¶ 144; PRSMF ¶ 144.  In the police report, Plaintiff recounted the incident and stated she felt sexually harassed because of Mr. Avril's statements and because Mr. Avril had allegedly once used the supply room to have sexual relations with another PATH employee.  Brophy Decl., Ex. 26 at PATH 001947–48.  The report did not state Mr. Avril had made physical contact with her person.  DSMF ¶¶ 146–48; PRSMF ¶¶ 146–48.  Additionally, that same day, Mr. Avril and Mr. Lupia sent memorandums to the Superintendent of the Transportation Division, Adrienne Holmes, and met with her regarding the incident with Plaintiff.  DSMF ¶ 140; PRSMF ¶ 140.

On May 3, 2011, Plaintiff sent a letter to Christopher Ward, PATH's Executive Director, regarding the incident.  *Id.* ¶ 152.  In the letter, Plaintiff stated she had been "held against [her] will," "sexually harassed," "intimidated," and "threatened."  Brophy Decl. Ex. 29 at PATH 001966.  The letter, however, did not include any specific allegations that Mr. Avril touched Plaintiff.  *See id.*

### C.   Plaintiff's Appointment with a PATH Doctor at OMS

On April 30, 2011, Plaintiff took a personal day.  DSMF ¶ 171; PRSMF ¶ 171.  The following day, Plaintiff took a previously scheduled vacation to Florida lasting through May 8, 2011.  *Id.* ¶ 172.  At some point during Plaintiff's vacation, Plaintiff's treating physician, Dr. Novaky, spoke by telephone to Dr. Francis, a physician in PATH's Office of Medical Services ("OMS") about Plaintiff's distress.  *Id.* ¶ 182.  Dr. Francis advised Dr. Novaky that Plaintiff could "call out sick" and would be ordered to OMS for an evaluation with Dr. Francis.  *Id.* ¶ 184.  Dr. Novaky testified that she conveyed Dr. Francis's advice to Plaintiff.  *Id.* ¶ 186.

On May 10, 2011, Plaintiff's first day back following her vacation, Plaintiff called PATH

5

Assignments and informed them that she was "calling out injury on duty until further notice." *Id.* ¶¶ 221–22.  Assignments coordinator Debra Evans responded that an employee cannot call out injured on duty without notifying her Operating Engineer and dispatcher and seeing a doctor at OMS.  *Id.* ¶¶ 223–26.  Ms. Evans further explained that Plaintiff could, however, call out sick and give an estimated date on which she would return to work.  *Id.* ¶ 227.  Plaintiff responded that she would therefore call out sick, with an estimated recovery period of a month and a half. *Id.* ¶¶ 227–28.

Plaintiff called Ms. Evans again and stated she had scheduled an appointment with OMS at Journal Square on May 11 at 10:00 a.m.  *Id.* ¶ 231.  Ms. Evans then contacted OMS and confirmed Plaintiff's appointment time.  *Id.* ¶ 234.  Plaintiff then called Assignments back and told a different coordinator that Plaintiff could not keep her 10:00 a.m. appointment with OMS due to a conflict with her appointment with another doctor.  *Id.* ¶¶ 235–37.  That doctor was a private psychologist, Dr. Mouthis, with whom Plaintiff had previously scheduled an appointment for May 11 at 2:00 p.m.  *Id.* ¶ 241.

At some point thereafter, Superintendent Holmes was advised that Plaintiff had attempted to call out of work due to an injury on duty, but had instead called out sick.  DSMF ¶ 255; PSMF ¶ 255.  Ms. Holmes was further informed that Plaintiff had cancelled her previously scheduled OMS appointment due to a time conflict with another appointment.  *Id.* ¶ 256.  In response, Ms. Holmes directed Assignments to tell Plaintiff she was ordered to attend the OMS appointment.  *Id.* ¶ 257.  At approximately 4:11 p.m. and 4:12 p.m., Assignments left voicemails at both of Plaintiff's telephone numbers advising Plaintiff she was ordered to attend an OMS appointment in New York City at 10:00 a.m. on May 11.  DSMF ¶¶ 265, 267; PSMF ¶¶ 265, 267.

At approximately 4:31 p.m., Plaintiff called OMS and spoke with Dr. Fisher, informing him that she was unable to make the 10:00 a.m. appointment. *Id.* ¶¶ 272–73. At approximately 4:40 p.m. and 4:42 p.m., Assignments left voicemails on both of Plaintiff's phones stating that Plaintiff's 10:00 a.m. OMS appointment had been rescheduled to 2:00 p.m. and requesting that Plaintiff return the call. *Id.* ¶¶ 277–80. The next morning, May 11, at approximately 8:45 a.m. and 8:47 a.m., Assignments left voicemails for Plaintiff reiterating that she was ordered to report to OMS in New York at 2:00 p.m. and asking her to return the call. *Id.* ¶¶ 285–88.

On May 11 at approximately 9:23 a.m., Plaintiff called OMS and spoke with Nurse Loretta Platero. DSMF ¶ 292; PSMF ¶ 292. According to Ms. Platero, Plaintiff stated she would not be able to make the OMS appointment because she had another doctor's appointment. DSMF ¶ 293; PSMF ¶ 293. When Ms. Platero offered to switch the appointment to the afternoon, Plaintiff responded that she could not make an afternoon appointment, either. DSMF ¶¶ 294–96; PSMF ¶¶ 294–96. Ultimately, Plaintiff never appeared at OMS. *Id.* ¶ 300. On May 13, 2011, Ms. Holmes notified Plaintiff that she was being taken out of service for failure to report to the Office of Medical Service. *Id.* ¶ 304; Brophy Decl., Ex. 21 at PATH 000592.

### E.      Hearings and Appeals Concerning the Events of April 28 and 29

On May 24, 2011, Superintendent Holmes sent Plaintiff two letters advising her that she was to appear for investigations into the following charges: failure to notify a supervisor before leaving a train while on duty, use of profane language with a supervisor, and failure to keep a scheduled medical appointment with OMS. Brophy Decl., Ex. 15 at PATH 0000359, Ex. 21 at PATH 000575.

On August 10, 2011, a hearing was held regarding Plaintiff's actions on April 28, 2011 ("Hearing 1"). *See* Brophy Decl., Ex. 15. On August 24, 2011, Ms. Holmes sent Plaintiff a

letter stating the charges were sustained and Plaintiff would be suspended for twenty workdays. Brophy Decl., Ex. 16.  Another hearing was held on August 12 and 17, 2011 regarding Plaintiff's failure to appear for her OMS appointment on May 11, 2011 ("Hearing 2").  *See* Brophy Decl., Ex. 21.  On August 30, 2011, Superintendent Fredrick Childs sent Plaintiff a letter stating the charge was sustained and Plaintiff would be suspended for sixty workdays, to be served consecutively with the twenty work-day suspension.  *Id.* Ex. 22.

On September 14, 2011, Plaintiff's Union Representative, Ralph Nunziato, appealed both Hearing 1 and Hearing 2.  *Id.* Ex. 17.  The request was granted but both appeals were unsuccessful.  *Id.* Ex. 19, Ex. 24.  Mr. Nunziato then appealed those decisions to the Public Law Board.  *Id.* Ex. 20, Ex. 25.  The Public Law Board denied the appeals, finding that "the Carrier's disciplinary conclusions were appropriate."[6]  *Id.* Ex. 20.

### F.     Plaintiff's EEOC Complaint

On August 1, 2011, Plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") Newark Area Office, alleging PATH discriminated against her on the basis of gender, age, and in retaliation for conduct protected by Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et. seq.* ("Title VII").  Brophy Decl., Ex. 41.  The Charge of Discrimination alleged two male supervisors had taken Plaintiff into a room and compelled her to change a UO Report.  *Id.*  It further alleged Plaintiff was taken out of service on May 13, 2011 in retaliation for sending a letter to Executive Director Ward and for prior EEOC complaints of age discrimination.  *Id.*

---

[6] In addition, the Public Law Board concluded Plaintiff's demand for a remedy was rendered moot because the Railroad Retirement Board had approved Plaintiff for disability annuity benefits retroactive to April 29, 2011.  *Id.*

### G.      Plaintiff's OSHA Complaint

On September 14, 2011, Plaintiff sent a letter to Occupational Safety and Health Administration ("OSHA") Supervisory Investigator John Schreck, alleging she had been "taken by [two] male supervisors into a room and compelled to remain against [her] will in an effort to force [her] to change [her] work report," which triggered her post-traumatic stress disorder ("PTSD"). Brophy Decl., Ex. 30.  As a result, Plaintiff stated, she "called off sick" and was ordered to OMS.  *Id.*  Plaintiff further alleged that because she could not attend the OMS appointment, she was taken out of service for insubordination.  *See id.*

### H.      Plaintiff Accepts Disability Payments

On November 1, 2011, the Railroad Retirement Board sent Plaintiff a letter notifying her that she has met the requirements for a disability annuity.  Brophy Dec., Ex. 47, at AM 000401– 02.  Plaintiff testified that, upon her belief, PATH was advised in January 2012 that Plaintiff had accepted Railroad Retirement Board benefits.  DSMF ¶ 341; PSMF ¶ 341.

### I.      The Instant Action

On November 21, 2011, Plaintiff filed a complaint in the instant action.  ECF No. 1.  She subsequently amended her complaint on August 23, 2012, ECF No. 13, and again on March 11, 2013, ECF No. 19 ("SAC").  Plaintiff's Second Amended Complaint asserts the following claims against PATH:  hostile work environment, retaliatory micromanagement, retaliatory discipline, and retaliatory harassment in violation of Title VII (Count One); First Amendment retaliation in violation of 42 U.S.C. § 1983 (Count Two); negligent infliction of emotional distress in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (Count Three); and retaliation in violation of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109 (Count Four).  *Id.*  Defendant filed the instant motion for summary judgment on December 30, 2014.

9

ECF No. 64.   On May 6, 2015, Plaintiff opposed the motion.   ECF No. 70.   The Court subsequently heard oral argument on the motion.  ECF No. 84.

## II.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, there exists a genuine issue of material fact for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (stating that "[t]o raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . .").  A fact is "material" if a dispute about that fact

10

"might affect the outcome of the suit under governing [substantive] law," and a "genuine" issue exists as to that fact "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson*, 477 U.S. at 248. The Court is to determine whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter. *Id.* at 249.

III.   **DISCUSSION**

    A.   **Title VII Claims (Count One)**

For the reasons set forth below, Defendant's motion for summary judgment on Count One is denied as to the hostile work environment and retaliatory harassment claims, and granted as to the retaliatory discipline and retaliatory micromanagement claims.

    1.   **Hostile Work Environment**

To succeed on a hostile work environment claim, a plaintiff must establish that: 1) the employee suffered intentional discrimination because of his/her sex; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person in like circumstances; and 5) *respondeat superior* liability exists. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The first four elements establish a hostile work environment, and the fifth element determines employer liability. *Id.*

Here, the Court finds a genuine issue of material fact as to the five elements of a *prima facie* case of a hostile work environment. First, Defendant argues that because it has provided evidence that Mr. Avril has also held a man in a room against his will, Plaintiff cannot show that the incident on April 29, 2011 was a result of Plaintiff's gender. *See* Def. Br. in Supp. at 26. However, Plaintiff alleges that she was not only being held against her will, but also that Mr. Avril grabbed her breast and hand while hanging up the phone she was using to call for help.

DSMF ¶¶ 135–36; PRSMF ¶¶ 135–36.   She repeatedly describes the incident as sexual harassment. *See, e.g.*, DSMF ¶¶ 144, 152; PRSMF ¶¶ 144, 152.  Based on the allegedly sexual nature of this behavior, a reasonable trier of fact could conclude that Plaintiff was subjected to sex-based discrimination, in satisfaction of the first element.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (explaining "sexual harassment" includes "[unwelcome] sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature") (citing 29 CFR § 1604.11(a) (1985)).

With regard to the second element, a reasonable juror could find that the incident on April 29, 2011, even considered in isolation, was sufficiently objectively severe to create a hostile work environment.  To prevail on her claim, Plaintiff must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).  To determine if harassment is severe or pervasive, the Court will consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[I]solated incidents (unless extremely serious) will not amount to discriminatory" behavior. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).

Here, Plaintiff alleges that, on April 29, 2011, Mr. Avril and Mr. Lupia met her as she was finishing her shift, then Mr. Avril "touched [her] elbow" and said he would "take [her] out of service" if she did not go with them.  McClement Dep., Tr. 140:3-141:-15.  The men brought Plaintiff to a small office and Mr. Lupia closed and blocked the door with his arm across it.  *Id.*

12

at 147:6–10; DSMF ¶ 121; PRSMF ¶ 121.  Plaintiff said she wanted to leave the room, yelled to leave "maybe a hundred times," and Mr. Avril responded "it's not what you want, it's what we want from you."  *Id.* 149:9–25.  Mr. Avril is described as a large man weighing about 300 pounds and standing over six feet tall.  McClement Dep., Tr. 145:5–11.  Plaintiff took the phone and tried to call a number of people from PATH, but no one was available.  McClement Dep., Tr. 150:3–23.  While Plaintiff was on hold, she asked for the door to be opened and Mr. Lupia opened the door.  DSMF ¶¶ 130–31; PRSMF ¶¶ 130–31.  Plaintiff also rewrote the UO Report to state:  "Mr. Avril is making me write this report in duress after working all nite [sic].  I did not use any foul language in front of anyone."  *Id.* ¶ 133.  Plaintiff testified that she subsequently tried to call 911 and that Mr. Avril either touched, brushed, or grabbed her breast as she was on the phone with 911.  *Id.* ¶¶ 135–36; McClement Disp. Tr.143:10–14.

The Court finds a genuine issue of material fact as to whether a reasonable employee would find this incident so severe as to alter the terms of her employment.  Although the incident on April 29, 2011 was isolated, it was purportedly physically threatening and intimidating. Plaintiff was allegedly taken to a small room by two males under a false pretense, the door was closed, she was not allowed to leave for some time, and when she tried to call for help Mr. Avril touched or grabbed her breast and hung up the phone.  Plaintiff reported this incident to multiple people soon after it occurred, although she did not state that Mr. Avril physically touched her in these reports and Mr. Avril denies touching her.[7]  The Court notes that Mr. Lupia, the only other

---

[7] *See supra* n.4, Plaintiff did not specify that she had any physical contact with Mr. Avril in her subsequent EEOC complaint, police report, letter to PATH Executive Director Ward, letter to OSHA Supervisory Investigator Schreck, meetings with treating doctors, or in conversations with her union representative.  Brophy Decl., Ex. 10, Tr. 148:8–149:2; Ex. 12, Tr. 138:1–21; Ex. 26; Ex. 29 at PATH 001965–66; Ex. 30; Ex. 41.

witness, was either not deposed in this matter or his testimony has not been presented to this Court. It is unclear whether Mr. Avril touched Plaintiff's breast in an overtly sexual manner, or whether he accidentally brushed up against her in an attempt to hang up the phone. Nevertheless, this assertion does not involve a minor incident of offensive language such as "occasional insults, teasing, or episodic instances of ridicule," which are insufficient. *Brooks v. CBS Radio, Inc.*, 342 F. App'x 771, 777 (3d Cir. 2009) (citations omitted). Rather, this was a purported sexual touching and an implied physical threat, blocking Plaintiff's ability to leave the room, and preventing her from calling for help. *See Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 578 n.13 (D.N.J. 2005) (explaining physical touching would certainly be highly probative evidence of sexual harassment). Considering the environment of the incident and Plaintiff's alleged inability to leave for a period of time, if Plaintiff's allegations are found to be credible, a reasonable juror could find this incident was sufficiently severe to create a hostile work environment for Plaintiff. *See Grazioli*, 409 F. Supp. 2d at 578 n.13; *Zastrow v. Ikegami Elecs. (U.S.A.)*, No. 97-3384, 1997 U.S. Dist. LEXIS 21002, *7 (D.N.J. Dec. 1, 1997) (denying a motion to dismiss and explaining that a reasonable person may find "two incidents of attempted touching of plaintiff's breast" sufficiently severe to create a hostile work environment); *Barrett v. Omaha Nat'l Bank*, 584 F. Supp. 22, 24, 30 (D. Neb. 1983), *aff'd* 726 F.2d 424 (8th Cir. 1984) (one incident of offensive touching while inside a vehicle from which the plaintiff could not escape was sufficient to constitute sexual harassment).

Plaintiff has also provided evidence that she was detrimentally affected by the incident. Specifically, Dr. Novaky (Plaintiff's doctor) testified that Plaintiff was traumatized from the incident. DSMF ¶ 178; PRSMF ¶ 178. In light of the allegations of sexual harassment, a jury could reasonably find that discrimination would detrimentally affect a reasonable person in like

circumstances.

Lastly, the Court finds there is a genuine issue of material fact as to whether the element of *respondeat superior* exists in this case.  As the Supreme Court explained in *Vance v. Ball State University*:

> If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing . . . affirmative defense[s] . . . . Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

133 S. Ct. 2434, 2439.  An employee is the victim's supervisor only where "the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2443 (internal quotation marks and citation omitted).

Here, in its Statement of Material Facts Pursuant to Local Rule of Civil Procedure 56.1, PATH stated and supported with evidence the proposition that in their positions as Chief Operations Examiner and Operations Examiner, Mr. Avril and Mr. Lupia did not have the authority to "institute discipline against" Plaintiff as an engineer, "and Mr. Avril never discusses with Ms. Holmes [the Superintendent of Transportation] whether to institute discipline against employees."  DSMF ¶ 17.  Although Plaintiff purports to dispute this contention, she has not meaningfully responded to Defendant's statement.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the Court may . . . consider the fact undisputed for the purposes of the motion . . . .").  Therefore, the Court will consider this statement undisputed for purposes of summary judgment.

*See Badalamenti*, 2014 WL 4798617, at *10 n.7 (finding "any statement of fact which was not denied . . . with a citation to the record as undisputed for the purposes of this motion for summary judgment."). As there is no genuine issue as to the fact that Mr. Avril and Mr. Lupia did not have the authority to impose discipline, the Court finds they were Plaintiff's co-workers, rather than supervisors as defined by the Supreme Court in *Vance*.

An employer may be held liable for harassment by a co-worker if the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment. *Andreoli v. Gates*, 482 F.3d 641, 644, (3d Cir. 2007) (internal quotation marks and citations omitted). An employer is negligent if it knew or should have known about the harassment, but failed to take prompt and adequate remedial action. *Id.* The Third Circuit has explained that an employer knew or should have known about workplace sexual harassment if "management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment." *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 105 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)). Moreover, "management-level employees have constructive notice of a hostile work environment when an employee provides management-level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer." *Id.* (citations omitted).

Defendant argues it was not negligent because Plaintiff did not give PATH adequate notice of the alleged incident, and even if she did, it took remedial action. *See* Def. Br. in Supp. at 24; Def. R. Br., ECF No. 75 at 6–7. On April 29, 2011, Plaintiff filed a police report with the Port Authority Police, Criminal Investigation Bureau that stated Plaintiff was "sexually harassed." DSMF ¶ 144; PRSMF ¶ 144; Brophy Dec. Ex. 26. Plaintiff also sent a letter to PATH Executive Director Christopher Ward on May 3, 2011 that stated she was held against her

will by two supervisors, "sexually harassed, harassed, intimidated, and threatened."  Brophy Dec. Ex. 29; DSMF ¶ 152; PRSMF ¶ 152.  Although Plaintiff did not use PATH's internal compliance procedure, *see* DSMF ¶ 28; PRSMF ¶ 28, a reasonable juror could find that management-level employees were on constructive notice of Plaintiff's sexual harassment allegations.

With this constructive notice, PATH had a duty to take prompt and adequate remedial action.  The Third Circuit has found adequate remedial action where "management undertook an investigation of the employee's complaint within a day after being notified of the harassment, spoke to the alleged harasser about the allegations and the company's sexual harassment policy, and warned the harasser that the company does not tolerate any sexual comments or actions." *Andreoli*, 482 F.3d at 644 (citing *Knabe v. Boury Corp.*, 114 F.3d 407 (3d Cir. 1997)).  For example, in *Huston v. Procter & Gamble Paper Production Corp*, the Third Circuit held that there was no genuine issue as to a material fact regarding whether the employer's remedial action was adequate because the employer had launched an investigation the day Huston filed her complaint, moved her to a different team where she did not work with the alleged harassers, interviewed the individuals who Huston mentioned in her complaint, and disciplined employees who violated company policies.  568 F.3d 100, 105–10 (3d Cir. 2009).

Here, by contrast, the Court finds a genuine issue of fact as to whether PATH took adequate remedial action in response to Plaintiff's allegations of sexual harassment.  Although it did not launch a formal investigation, Defendant argues that it did investigate Plaintiff's claims by having Ms. Lewis-Desire speak with Plaintiff, and by having Ms. Holmes interview Mr. Avril and Mr. Lupia.  ECF No. 75 at 5–7.  However, according to her own certification, Ms. Lewis-Desire spoke with Plaintiff to discuss her missing the doctor's appointment, rather than the incident on April 29, 2011.  *See* Certification of Stephanie Lewis-Desire, ECF No. 64-4.

Furthermore, although Ms. Holmes testified that she spoke with Mr. Avril and Mr. Lupia on the same day as the incident, it is unclear whether Ms. Holmes discussed PATH's sexual harassment policy and whether she warned them that PATH does not tolerate any sexual actions. *See* ECF No. 48:5–53:8. Defendant blames any inadequate investigation on Plaintiff's failure to "allege any specific sexually harassing or retaliatory behaviors" during her conversation with Ms. Lewis-Desire and in her prior reports. ECF No. 75 at 7. However, given that Plaintiff's letter to Mr. Ward on May 3, 2011 recounted the allegedly harassing behavior of Mr. Avril and Mr. Lupia, and explicitly described it as sexual harassment, there remains an issue of fact as to the sufficiency of Defendant's investigation.

Accordingly, Defendant's motion for summary judgment as to a hostile work environment in Count One is denied.

### 2.    Retaliation

Where, as here, a plaintiff proffers indirect evidence of discrimination or retaliation, the Court applies the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by showing: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *See Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 (3d Cir. 2015). If the plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Moore*, 461 F.3d at 342. If the defendant does so, the burden returns to the plaintiff to demonstrate the defendant's reason is

mere pretext for discrimination. *Neidigh v. Select Specialty Hosp.*, 664 F. App'x 217, 221 (3d Cir. 2016) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).

Here, Plaintiff appears to allege three forms of retaliation:  micromanagement, disciplinary action, and harassment.  The Court addresses each of these contentions in turn.

### a)      Micromanagement

First, Plaintiff contends that she was subjected to a "pattern of micro scrutiny of her work activities by management personnel of the Defendant and required to repeatedly engage in writing reports to document her work actions" in retaliation for filing four EEOC complaints and a lawsuit against PATH between 2008 and 2010.  SAC ¶¶ 18–25.  Here, Plaintiff's claim fails at the *prima facie* stage because, viewed in a light most favorable to Plaintiff, the evidence cannot support an inference that PATH took an adverse employment action against her.

To rise to the level of an adverse employment action, the "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, (2006).  "[C]omplaints of micromanaging, increased scrutiny and reprimands about [a] plaintiff's lateness, would not, under most circumstances, rise to the level of materially adverse actions," *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 426 (D.N.J. 2009) (internal citations and alterations omitted).  Therefore, the micromanagement alleged here does not rise to the level of materially adverse actions necessary to satisfy the second element of a *prima facie* case of retaliation. Accordingly, the Court finds Plaintiff has not created a genuine issue of material fact as to this form of retaliation.

### b)      Disciplinary Actions

Second, Plaintiff alleges that Defendant suspended her without pay for eighty workdays

in retaliation for filing formal complaints about Mr. Avril and Mr. Lupia's conduct on April 29, 2011. SAC ¶¶ 40–42. Those complaints included a criminal complaint to the PATH Police on April 29, 2011 and a letter to PATH's Executive Director on May 3, 2011. *Id.* ¶¶ 28–32.

Defendant has carried its burden to show a legitimate, nondiscriminatory reason for Plaintiff's suspension, namely Plaintiff's use of profane language in the workplace in response to an employer directive,[8] failure to notify her supervisor before taking an unscheduled break during her shift,[9] and disregard of a direct order to attend a scheduled OMS appointment. Next, at the pretext stage, Plaintiff must show that she would not have suffered an adverse employment action "but for" her protected activity. *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 96 (3d Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

Drawing all inferences in Plaintiff's favor, the Court finds the evidence is insufficient to establish but-for causation. Ms. Holmes testified that, prior to this lawsuit, she was unaware of Plaintiff's letter to Executive Director Ward, DSMF ¶ 155, and Plaintiff has offered no countervailing evidence undermining Ms. Holmes's testimony. Plaintiff was ultimately suspended for eighty days after a series of hearings at which Plaintiff had the opportunity to present evidence and conduct cross-examination. The suspensions were upheld on appeal, and again on further appeal to the Public Law Board. *See McClement v. Port Auth. Trans-Hudson*, 505 F. App'x 158, 163 (3d Cir. 2012) (finding, in a prior discrimination suit Plaintiff brought against PATH, that Plaintiff failed to show PATH's discipline was retaliatory where the

---

[8] The PATH Book of Rules prohibits "[t]he use of profane or indecent language in the transaction of business with . . . fellow employees." Brophy Decl. Ex. 13, Rule E(5) at PATH000891.

[9] Defendant has offered evidence, which Plaintiff has failed to rebut, that taking such a break violated PATH custom. *See* Brophy Decl., Ex. 15 at Tr. 22:18–19.

discipline was sustained after a fair hearing and twice upheld on appeal).  Further, the length of Plaintiff's suspension accords with PATH's policy of implementing progressive discipline. Plaintiff has a documented disciplinary history, including discipline for failure to stop at a traffic signal in 2005, use of a cell phone while operating a passenger train in 2007, use of a fraudulent parking pass in 2008, and distribution of inappropriate materials in 2009.  *See* Brophy Decl., Ex. 21 at 190–91.  PATH's policy of progressive discipline provides that repeated infractions by employees are treated with punishments of increasing severity.  *See* Brophy Decl, Ex. 3, Tr. 131:15–132:6.

Thus, Plaintiff has failed to raise a genuine dispute of material fact to defeat summary judgment on this form of retaliation.

### c)       Retaliatory Harassment

As a third form of retaliation, Plaintiff alleges that she was subjected to harassment, and points to the same allegations that form the basis of her hostile work environment claim.  ECF No. 75 at 6–9.  Defendant argues that her retaliatory harassment claim fails because:  (1) the sole alleged incident of sexual harassment does not qualify as a retaliatory adverse employment action; (2) it had no notice of the sexual harassment; and (3) no basis for employer liability is present.  ECF No. 75 at 6–9.  The Court discusses each argument in turn.

First, the Third Circuit has held that retaliatory harassment severe enough to create a hostile work environment is cognizable as a retaliatory adverse employment action under Title VII. *Durand v. FedEx*, No. 12-7450, 2014 WL 2155371, at *3 (D.N.J. May 22, 2014) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)).  Thus, for the reasons set forth *supra*, Section III.A.1, there are issues of fact as to whether the claimed harassment is actionable.  Second, as explained above, Plaintiff has introduced evidence indicating that Defendant had notice of the

alleged harassment.  *See supra* Section III.A.1.  Third, also as explained above, Defendant may be held liable for the actions of its employees because there is a genuine dispute of material fact as to whether it took proper remedial action upon notice of the alleged harassment.  *See id.*

Accordingly, Count I may proceed on the basis of retaliatory harassment, but the retaliation claims are dismissed to the extent that they rely on retaliatory micromanagement and disciplinary actions.[10]

### B.      First Amendment Retaliation (Count Two)

The Third Circuit has established a "three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment."  *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).  First, the employee must show the activity is protected.  *Id.*  Second, the employee must show the protected activity was a substantial factor in the alleged retaliatory action.  *Id.*  Third, the employer may defeat the employee's claim by demonstrating it would have taken the same adverse action against the employee in the absence of the protected conduct.  *Id.*

Plaintiff alleges Defendant suspended her in retaliation for her May 3, 2011 letter to Executive Director Ward and her August 3, 2011 EEOC Complaint.  *See* SAC, Count Two, ¶¶ 4, 5.  Plaintiff's evidence, however, would not allow a reasonable factfinder to infer a causal connection between those activities and her suspensions.  As discussed above, Defendant has shown it would have suspended Plaintiff in the absence of her protected conduct.  Therefore, the

---

[10] The Court notes that, although Plaintiff discusses a constructive discharge claim in her briefing, she does not appear to include a claim of constructive discharge in the Second Amended Complaint.  *See Warfield v. SEPTA*, 460 Fed. Appx. 127, 132 (3d Cir. 2012) (holding that plaintiff waived claim raised at summary judgment by not moving to amend complaint to assert claim) (citations omitted).

Court will grant Defendant's motion on Count Two.

    **C.**    **Negligent Infliction of Emotional Distress Under FELA (Count Three)**

        Plaintiff alleges Mr. Avril and Mr. Lupia's negligent actions on April 29, 2011 caused her severe emotional distress.  SAC, Count Three ¶ 7.  Defendant argues Plaintiff's claim fails because:  (1) PATH cannot be held liable as a matter of law because it did not have notice of its employees' propensity to engage in the behavior alleged to have caused Plaintiff's distress; and (2) Plaintiff cannot show she was in a zone of danger.  Def. Br. in Supp., ECF No. 64–74 at 36–40.  The Court finds these arguments unpersuasive.

        FELA permits railroad employees to recover for injuries "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such [railroad]."  45 U.S.C. § 51.  FELA has a broad and remedial purpose, and thus a railroad will be held liable if its "'negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.'"  *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) (citation omitted); *see also Hines v. CONRAIL*, 926 F.2d 262, 268 (3d Cir. 1991) (explaining a trial court is "justified in withdrawing . . . issue[s] from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee.").  "In enacting FELA, Congress 'placed the negligence of a co-employee upon the same basis as the negligence of the employer . . . .'" *Allen v. Nat'l R.R. Passenger Corp.*, 90 F. Supp. 2d 603, 613 (E.D. Pa. 2000), *aff'd*, 254 F.3d 1077 (3d Cir. 2001) (quoting *Chesapeake & Ohio Ry. v. De Atley,* 36 S.Ct. 564, 565 (1916)).

        First, Plaintiff need not establish *respondeat superior* or notice, but may prevail "merely by producing evidence that a[] [PATH] employee was negligent and caused [her] injury."  *Allen*,

90 F. Supp. 2d at 613.[11]   Here, if Plaintiff's allegations are deemed credible, a reasonable jury

could find Mr. Avril and Mr. Lupia were negligent in placing Plaintiff at risk of physical harm.

Second, a plaintiff asserting a claim for negligent infliction of emotional distress under

FELA must satisfy the "zone of danger" test by showing:  "(1) the plaintiff sustained a physical

impact or (2) the plaintiff was placed in immediate risk of physical harm or was threatened

imminently with physical impact."  *Ferguson v. CSX Transp.*, 36 F. Supp. 2d 253, 256 (E.D. Pa.

1999) (citing *Bloom v. Consolidated Rail Corp.,* 41 F.3d 911, 915 (3d Cir. 1994)).   But

"harmless contact alone, without real physical injury or the threat thereof, does not constitute a

'physical impact' within the meaning of the zone of danger test . . . ."  *Allen*, 90 F. Supp. 2d at

614.   Here, Plaintiff testified that Mr. Avril physically directed her into a small room, Mr. Lupia

blocked her exit despite her requests to be set free, and Mr. Avril grabbed and/or touched her

breast and hung up the phone when she attempted to call for help.  DSMF ¶¶ 123–37; PRSMF ¶¶

123–37.  These allegations raise a genuine issue of material fact as to whether Plaintiff sustained

a physical injury or was at immediate risk of physical harm.  *See Sloan v. United States*, 603 F.

Supp. 2d 798, 808 (E.D. Pa. 2009) (holding the plaintiff's allegation that a coworker "menaced

[her] physically" and swore at her was sufficient to preclude summary judgment on her claim of

---

[11] Defendant relies primarily on *Higgins v. Metro-N. R. Co.*, 318 F.3d 422 (2d Cir. 2003) to
argue a contrary position.  However, that case is neither controlling nor analogous to the instant
action.   Whereas *Higgins* addressed an employer's liability under FELA for its employee's
intentional torts, *see* 318 F.3d at 425–28, Plaintiff herein brings a claim for negligent infliction of
emotional distress, *see* SAC, Count Three, ¶ 7.  Moreover, even if *Higgins* were applicable here,
the court in *Higgins* noted that liability for an employee's intentional tort will attach where the
employee acted within the scope of employment.  *See Higgins*, 318 F.3d at 426.  Defendant does
not appear to argue that Mr. Avril and Mr. Lupia acted outside the scope of their employment
when they brought Plaintiff into the room to rewrite the UO Reports.

negligent infliction of emotional distress).[12]   Therefore, summary judgment on Plaintiff's FELA claim will be denied.

### D.    FRSA Retaliation (Count Four)

Under the FRSA, a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to the employee's engagement in an enumerated protected activity.  49 U.S.C. § 20109(a). Defendant argues Plaintiff failed to exhaust her administrative remedies regarding this claim. Specifically, Defendant argues that the Second Amended Complaint explicitly alleges a violation of FRSA subsection (a) (protection for reporting an injury), whereas Plaintiff's administrative claim alleged only a violation of FRSA subsection (c) (protection "following orders or a treatment plan of a treating physician.").  *See* Def. Br. in Supp. at 41.   The Court agrees, and thus grants summary judgment for Defendant on Count Four.

An employee alleging an FRSA violation must first file an administrative complaint alleging such retaliation with OSHA.[13]   49 U.S.C. § 20109(d)(1).  An employee may also seek *de novo* review of a final order of the Secretary of Labor in the district court if "the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee."  *Id.* at § 20109(d)(3).  Plaintiff's Second Amended Complaint asserts a claim pursuant to subsection (a) of the FRSA, which prohibits

---

[12] Although *Sloan* concerned a claim under the Jones Act, the court therein found similarities between the Jones Act and FELA; for example, both statutes employ the same "relaxed standard of causation." *Sloan*, 603 F. Supp. 2d at 805 (citing *Gottshall*, 512 U.S. at 543).

[13] "The statute states that the administrative complaint is to be filed with the Secretary of Labor, but the Secretary of Labor has delegated that responsibility to OSHA under the regulations that it has promulgated." *Willis v. Vie Fin. Grp., Inc.*, No. 04-435, 2004 WL 1774575, at *3 (E.D. Pa. Aug. 6, 2004) (citing 29 C.F.R. § 1980.103(e)).

retaliation against an employee for, *inter alia*, notifying a carrier of a work-related injury or illness.  SAC, Count Four; 49 U.S.C. § 20109(a)(4).  Subsection (c) provides protection to an employee for, *inter alia*, "following orders or a treatment plan of a treating physician."  49 U.S.C. § 20109(c)(2).

Here, Plaintiff's complaint to OSHA alleged retaliation pursuant to subsection (c), stating she was taken out of service for not going to a doctor's appointment.  Plaintiff's letter to Supervisory Investigator John Schreck asks whether she might have an FRSA claim when "[t]he [S]uperintendent of Transportation immediately took [Plaintiff] out of service with no pay for insubordination for not showing up at the" doctor's appointment.  Brophy Decl. Ex. 30.  Plaintiff alleges that a claim of retaliation for a work-related injury is reasonably related to Plaintiff's claim that she was suspended for missing an appointment.  However, Plaintiff's complaint to OSHA is unambiguous:  she alleges she was taken out of service "*for not showing up at the Dr's apt.* [sic]."  *Id.*[14]  This is also the claim OSHA understood Plaintiff to be making, as evidenced by OSHA's letter informing PATH of Plaintiff's allegations, which states: "Complainant says that she was suspended without pay because her appointment with a PATH doctor conflicted with her appointment to see her treating physician.  She canceled the PATH appointment and was told she could reschedule.  Her attempts to reschedule were rejected by PATH and she was suspended for insubordination."  Brophy Decl. 33.  Such a claim is distinct from a claim alleging retaliation for reporting a work-related injury.  As Plaintiff's complaint to OSHA stated that her claim was for retaliation due to missing a doctor's appointment, the Court finds Plaintiff's complaint to OSHA was pursuant to subsection (c), rather than subsection (a).  Accordingly,

---

[14] Plaintiff's follow-up email to Mr. Schreck states "PATH took me out of service with no pay, after I called off sick."  *Id.* Ex. 31.

26

Plaintiff has not exhausted her administrative remedies for a claim pursuant to 49 U.S.C. § 20109(a)(4), and Defendant's motion for summary judgment is granted as to Count Four.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court grants in part and denies in part Defendant's motion for summary judgment.  ECF No. 64.  Count One (Title VII) may proceed as to the hostile work environment and retaliatory harassment claims, but it is dismissed as to the retaliatory discipline and retaliatory micromanagement claims.  Counts Two (First Amendment Retaliation) and Four (FRSA Retaliation) are dismissed in their entirety.  Count Three (Negligent Infliction of Emotional Distress Under FELA) may proceed in its entirety.  An appropriate Order follows this Opinion.

DATED: January 12, 2022                          /s/ Claire C. Cecchi
_____
**CLAIRE C. CECCHI, U.S.D.J.**